Good morning and may it please the court. My name is Chris Longman for the plaintiff and appellant Omar Lopez. I'd like to reserve two minutes for rebuttal if I may. Your Honor, in screening out Mr. Lopez's section 1983 complaint for failure to state a claim, the district court misapplied the deliberate indifference standard to demand more from the police than the law requires. Can I ask a plenary question? Since this was a screening on a FP claim, are we applying the 12B6 standard or something lesser, i.e., does it have to be worse than a 12B6? No, the 12B6 standard applies. So there's a facial judgment without any briefing? I mean, I thought an FP standard was more like frivolousness. Is that not true? I believe it's not true. We've got some cases cited in our papers that tell us that the 12B6 standard applies to these section 1915E dismissals for failure to state a claim. So I'll first say a bit about the deliberate indifference claim specifically as applied to the failure to treat Mr. Lopez's eye condition, which I think is the heart of his complaint. And then I'll plan to say a few words about the statute of limitations affirmative defense that's raised in the response to the brief. There are two fundamental problems with the district court's analysis of the claim for deliberate indifference toward Mr. Lopez's eye disease. The first is that the district court didn't have a broad enough view of what it means to be deliberately indifferent and so found that the particular delays and denials of care that are pled in the complaint couldn't amount to an Eighth Amendment violation. And the second problem, which is related, is that the district court seemed to require Mr. Lopez to plead a conclusion regarding state of mind, while at the same time overlooking the facts he did plead that would support an inference about what state of mind the defendants actually have. So on the court's view. Here's another preliminary question, if I may. If we thought that the complaint, I mean, ultimately it seems to me your argument is that he should have been given leave to amend. And if that's what we thought, does that happen, do we remand before the form of corpus decision or do we say the form of corpus should have been granted and then he should be given leave to amend? Does it matter which way it happens? I don't think it matters. Okay. Yes. The argument is he should be given leave to amend with respect to naming some defendants specifically. Do you think it's adequate on its face substantively aside from the defendants? I beg your pardon? Do you think it's adequate on its face substantively aside from the defendants? Yes, at least with respect to the denial of care for his eye disease. We do. So are we talking about the first detention or are you talking about the, after he pled and went back in and he had had surgery scheduled and they just ignored that? I'm talking about both together. Okay. I think that the best way to read the pro se complaint at this point is that the actions during the first stint in custody and the second stint in custody together Are cumulative. Yeah. Comprised of cumulative injury. So this is kind of a procedural question, too. So the district court issued an order denying leave to file informa pauperous for failure to state a claim. So if we were inclined, and I'm not saying we are, but if we were inclined to reverse, we would order, instruct the district court to grant informer pauperous status and to reinstate the complaint. Correct. Okay. At which point the complaint could be, at which point I suppose you would have 120 days to serve the defendants and off you go. And you might be amending the complaint as well. Now that we actually have counsel representing him. All right. So how would you amend it to state a claim? I know you haven't gone through this exercise formally yet, but, I mean, just off the top of your head. Sure. We want to make sure that any amendment would be viable. Sure. So. Sure. As far as the factual pleadings go, I think there's a good bit there already. What we would do to, the amendments that I think would be most important would be to identify the defendants more specifically. And also to evaluate whether there are other defendants that would need to be named. Particularly those might be folks that are involved in the second stint, the denial of care during the four-month period of the second stint in jail. That would be the first thing I would recommend some struggles to do, to try to more specifically identify the defendants. Well, right now he doesn't know who any of those people are. How is he going to find out? Well, frankly, I'm not entirely certain. I know that if the complaint survives, gets served, he's got some time to identify his does. I imagine there can be some discovery. I would also, just to add one more thing to your question, Mr. Thomas, I would add yes, it's true he doesn't know them by name. I think that there may be some, there may be a bit of unclarity, I guess, about who specifically the defendants are in the second stint. It's unclear from the complaint. Okay. Would you, not to interrupt you, but I see you're focused on the parties, but would you amend this, propose to amend the substance of the claim? I would. I would to allege some intermediate facts. He pleads deliberate indifference. And then he pleads facts that I think could allow facts finders to infer the state of mind, the knowledge of substantial risk from action or inaction. What's maybe missing in the middle are some allegations about, yes, these people had the state of mind. When the physician saw me and said, you have pink eye, now you need glasses, he knew that there's substantial risk of harm. Could you follow me from not treating me at that point? I would recommend to allege those facts. But also, I mean, that part of the case is difficult, because you'd have to actually allege that he really knew he had something terrible wrong with him, but said he had pink eye, right? I mean, it couldn't simply be that it was he was just making an error, which apparently is not an unusual error. I get this disease is not that easy to diagnose. Correct. It wouldn't, malpractice would not be sufficient. Right. There may be malpractice here. It wouldn't be enough. But I think that at least some of the facts that are, that are pled in the complaint already would allow a fact finder to infer that the physician did indeed know that there was a substantial risk. What? I mean, ultimately, I mean, it seems like when your case gets a lot easier is when he is put back in prison and already has a diagnosis and scheduled surgery, and it doesn't go on for four months. Now, why does the rest of it even matter in terms of him getting recompense for what happened to him? I don't know that it does. It may matter because as soon as the case gets down the road and we were getting some medical testimony about what actually happened to his eye, right, he pleads right now that at the time he had surgery in October 2008, eye damage became permanent, or eye damage was permanent at that time. So his problem could be that it could already have been beyond me to pale at the time he came back to prison. Is that the problem? I don't know if that's necessarily a problem. The reason I think that the earlier facts may matter and may be important to be a part of the cause of action is because the injury could be accumulating like this. And it's related to the bad food, right? Isn't it that one cause of the eye disease is eating rotten food? Yes, that's claimed. That's pled in the complaint. I mean, wouldn't there have to be an amendment of that cause of action to say at least that it's plausible or possible that in this time frame, I mean, at least it's my vague impression that this toxoplasmosis doesn't accumulate to that degree in that time frame? He'd at least have to allege otherwise, wouldn't he? Yes. And I think that the issue of the bad food, if I were to amend this complaint, as I stand here today, another thing I would do, I think, would be to allege separate Eighth Amendment violations with respect to food and respect to the denial and delay in inappropriate medical care. The rotten food, he alleges in the complaint, served him the first time caused the toxoplasmosis. But the real government of the complaint, the one that matters, is the denial of medical care for two years and then four months after that. Your time has expired. I'll give you a minute for rebuttal. Morning. I'm Doug Nelson. Rather than proceed with an argument, I would prefer to just respond to questions since there apparently are a number of them. Well, I guess my question is, the inmate comes with a diagnosis of toxoplasmosis. He says he needs surgery. He doesn't get surgery for four months. Why isn't that enough to overcome a screening decision by the judge? I mean, he's got enough of a deliberate indifference. I realize, and please understand, that you have defenses to all of that. But why isn't that sufficient to get the odd screening? I think as pled, I mean, it seems to me that, first of all, the jail doesn't make medical decisions. The jail does take people in initially, or the custodial institution takes people in and makes a determination at that point. But they don't necessarily evaluate the medical records. There's nothing in the complaint that would suggest that there were any medical records. But doesn't he mention he immediately told whoever he was trying to deal with that, in fact, he had this, not only did he have a diagnosis, but he had a scheduled surgery and that it needed to go forward? I don't believe that's part of the complaint, no. The complaint simply said they canceled it. Well, how can you cancel it if you don't know what it is? There's nothing in the complaint itself that suggested that the institution was aware of a diagnosis. How can you cancel something that you don't know exists? Oh, you don't. I don't think there's any question that they canceled the scheduled surgery. Right, so they knew something was up. I know you're in an awkward spot because you didn't have a chance to respond to this complaint. The district court threw it out before you saw it. But my question is, why isn't there enough there to get beyond screening from the district court, given the liberal standards that apply to pro se pleadings? He says, I got this diagnosis, I have surgery scheduled, I went back in and they canceled the surgery, and now I've lost vision. I mean, I know you have all sorts of factual defense, but if you're a district judge looking at that, why isn't that enough to get you by the standard? I guess if you take that segment of it in isolation, you're quite correct. Why don't you take that segment of it in isolation? I mean, in other words, whatever's true of the rest of it, at least that much of it has to be survived, doesn't it? That much could survive. If the court is going to direct it to be sent back and be amended, then I would agree. Now, I understand you have the statute of limitations argument, but I guess my question, why does that arise on screening? Again, we're looking at a very small part of the decision. I know you're looking at the big picture. But the only thing in front of us is, did the district court make an error in throwing this case out before even giving you a chance to respond? So I recognize you may have a really good legal defense, you may have great factual defenses, but you haven't had a chance to make them yet. So how can we deal with that in the first instance? I have another response to that, too. Okay. So what about my initial question, then, is just procedurally? Because I don't know that we have any case law on this. Does it make any weight of difference whether we say grant the informer porpoise, because this is at least facially admit some piece of this is okay and the rest can be dealt with, you know, on the merits, or do we tell them to go back before determining the informer porpoise and fix the complaint? It doesn't matter at all. I'm not aware procedurally that the complaint can be amended once the informer porpoise states it. You don't think it makes a difference? Pardon? Would it make more sense just to grant the informer porpoise and then proceed as things now stand? That's fine with me, Your Honor. And you agree that the standard on informer porpoise is – and do you also agree that the standard on informer porpoise is a 12B6, not something lesser, i.e. it's not a frivolousness standard? It's not a Rule 11 type standard. I approach it from the standard 12B6 standard and not a lesser standard. I'm not aware that there's a lesser standard. But that seems kind of peculiar only because there hasn't been a response. And it's – I mean, that may be what our case law says, but it seems to me that when you're doing it ex parte, when the judge is doing it ex parte, it seems odd to be making actual legal decisions. I mean, for example, if somebody alleged a First Amendment – but it wouldn't be frivolous. It would not. And it appears that what the judge applied was a 12B6 standard. Right. I mean, I think that's really subject to some question because we have another case that says that denial of FP may be – informer porpoise may constitute a strike under the Prisoner Litigation Reform Act, and that standard is frivolousness. So I don't know. It would seem to me that a different standard ought to apply, but we'll have to take a look at that. Any further questions? I think I appreciate your response. Do you agree that we should transfer it back to the Eastern District? It should be in the Eastern District. I don't think there's any dispute about that. Okay. Okay. Where is – do you know where Mr. Lopez is now? I mean, is he incarcerated? The last – he's out of prison. He's with his mother's husband's president. President. So it is the Eastern District. Yeah. Okay. And the jail is in the Eastern District. Okay. Okay. Great. Appreciate it. Thank you. Do you want to take any time for a bubble? No, I'm okay. All right. Very good. Thank you. Thank you both for your presentation, and thank you for taking this case on pro bono for the court. The case will be submitted for decision.
judges: Thomas, Wardlaw, Berzon